1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

12

13

14

15

16

17

18

19

| | |
|---|---|
| ANN HENEGHAN, individually, and as Personal Representative of the Estate of CATHLEEN DELIA ROSS, and JOHN ROSS, individually,<br><br>                    Plaintiffs,<br><br>          v.<br><br>CROWN CRAFTS INFANT PRODUCTS, INC., a Delaware Corporation; WILLIAM SEARS, M.D. d/b/a SEARS PEDIATRICS AND FAMILY MEDICINE, INC., a California Corporation,<br><br>                    Defendants. | CASE NO. C10-05908RJB<br><br>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

20

21

        This matter comes before the court on Defendants' Motion for Summary Judgment.  Dkt. 27.  The court has considered the relevant documents and the remainder of the file herein.

22

## RELEVANT BACKGROUND AND UNDISPUTED FACTS

23

24

        This case concerns the death of 3-month old C.R. in October 2004.  Plaintiff Ann Heneghan, C.R.'s mother, had purchased and used a Nojo - The Original Baby Sling ("Nojo

1  sling" or "sling") after seeing the product referenced in The Baby Book by Dr. William Sears.

2  Dkt. 34 at 1.

3         On October 23, 2004, Ms. Heneghan visited a retail store, taking C.R. with her into the

4  store.  Dkt. 34 at 2.  At some point, Ms. Heneghan placed C.R. in the sling, where C.R. remained

5  for approximately 10-15 minutes.  Dkt. 34 at 2.  When Ms. Heneghan removed the sling so that

6  she could put C.R. in the car seat, she noticed that her daughter was unresponsive.  Dkt. 34 at 2.

7  C.R.'s heartbeat and breathing were restored by paramedics, but it was determined at the hospital

8  that she was essentially brain dead.  Dkt. 34 at 2.  C.R. was removed from life support and died

9  on October 27, 2004.  Dkt. 34 at 2.

10                                      DISPUTED FACTS

11        The parties dispute when Ms. Heneghan and C.R.'s father, Plaintiff John Ross, were on

12  notice that C.R.'s death may have been caused by the sling.  Defendants assert that Ms.

13  Heneghan knew or should have known by January 2005 that the sling may have caused C.R.'s

14  injury and death.  Dkt. 27 at 7-8.  Plaintiffs respond that Ms. Heneghan did not discover a

15  potential connection between C.R.'s death and the sling until March 2010.  Dkt. 36 at 1.  Each

16  side marshals facts to support its position.

17        A.  Plaintiffs' Disputed Facts

18        In October 2004, according to Ms. Heneghan, the doctors at the hospital told her C.R.'s

19  death was probably the result of Sudden Infant Death Syndrome (SIDS).  Dkt. 34 at 2-3.  She

20  never spoke to Dr. Jonathan Chalett, the emergency room doctor who listed "asphyxia by snugli"

21  as a possible cause of C.R.'s injury.  See Dkt. 29 at 2, Dkt. 34 at 3.

22        Ms. Heneghan asserts that she continued to research the underlying cause of C.R.'s death,

23  after receiving the Pierce County Medical Examiner's autopsy report which indicated that:

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 2

1   Death resulted from hypoxic encephalopathy, with associated pneumonia, following
    resuscitation from cardiopulmonary arrest of unknown cause (unknown etiology). The
2   manner of death is classified as undetermined.

3       Dkt. 34 at 3.  *See also* Dkt. 33-1 Exh. A at 8.  After receiving the report, Ms. Heneghan

4   followed up with the Medical Examiner, Dr. John D. Howard, to learn what the wording on the

5   death certificate meant.  *See* Dkt. 33-3 Exh. C at 2.  On January 19, 2005, she received a reply

6   from Dr. Howard explaining that C.R.'s death was appropriately categorized under SIDS, but did

7   not mention the Nojo sling as a possible cause of death.  Dkt. 34 at 3-4.  *See also* Dkt. 33-3 Exh.

8   C at 2.

9       Ms. Heneghan indicates that C.R.'s death certificate supported her understanding that

10  C.R. had died of SIDS, because it listed the immediate cause of death as "hypoxic

11  encephalopathy" and the underlying cause as "Resuscitation from cardiopulmonary arrest-

12  [unknown] cause [that is] [c]onsistent with S.I.D.S."  Dkt. 34 at 3.  *See also* Dkt. 33-2 Exh. B at

13  2.

14      Ms. Heneghan's friend, Dr. Tonia Jensen, reported C.R.'s death to the U.S. Consumer

15  Product Safety Commission (CPSC) on November 27, 2004.  Dkt. 34 at 4.  As part of the

16  investigation, A CPSC investigator interviewed Ms. Heneghan on December 20, 2004.  Dkt. 34

17  at 5.

18      On January 31, 2005, Ms. Heneghan received by email the results of the investigation by

19  the CPSC, further supporting her understanding that C.R.'s death was not connected to the sling.

20  According to the email, there were no errors in the manner she had used the sling, and no defects

21  in the sling itself.  Dkt. 34 at 4.  Ms. Heneghan specifically points to the part of the email which

22  calls C.R.'s death a "terrible, freakish accident" involving SIDS.  Dkt. 34 at 5.

23      Subsequently, Ms. Heneghan joined SIDS support groups and participated in groups with

24  other parents who had lost children to SIDS.  Dkt. 34 at 6.  She states in her declaration that at

this point she believed she had done a sufficient investigation into C.R.'s death, and that she did not have any communication with Dr. Howard or the Medical Examiner's Office between April 13, 2005 and April 1, 2010.  Dkt. 34 at 6-7.

According to Ms. Heneghan, she first became aware that the Nojo sling might have played a role in C.R.'s death on March 12, 2010, when she received a phone call from the CPSC about a recall on a different brand of sling, and also an email from the CPSC providing her with a warning the CPSC had just released about the suffocation hazard posed by slings in the first few months of life.  Dkt. 34 at 7-8.

On April 1, 2010, she wrote to Dr. Howard to inquire whether the sling could have been related to C.R.'s death, and referred him to the recall of the different brand of sling carrier and the recent CPSC warning.  Dkt. 34 at 8.  Dr. Howard responded on April 2, 2010 that he considered positional asphyxia as a possible but not proven cause of death for C.R.  Dkt. 34 at 9. Ms. Heneghan claims this was the first time a medical provider had given her information linking C.R.'s death to positional asphyxia in the sling.  Dkt. 34 at 9.

Subsequently, on December 12, 2010, Dr. Howard was provided with a copy of the original CPSC report, and sent a letter to Ms. Heneghan's attorney indicating that some sort of asphyxiation related to the sling should be considered as a factor in C.R.'s death.  Dkt. 34 at 9.

B.  *Defendants' Disputed Facts*

The Defendants' motion for summary judgment claims that Ms. Heneghan knew in October 2004, or should have known through due diligence, that the sling might have been a factor in C.R.'s death.  Dkt. 27 at 4.  They claim that Ms. Heneghan was aware in October 2004 the Nojo sling might have been involved in C.R.'s death because her friend, Tonia Jensen, D.O. had told her that when a baby dies inside a carrier it needs to be investigated.  Dkt. 28-2 Exh. B at 3.  The Defendants also rely on the differential diagnosis by Dr. Chalett, the emergency room

1  physician who treated C.R. on admission to the hospital, of death resulting from "asphyxia by

2  snugli."  Dkt. 29 at 2.

3        The Defendants also point to other facts from December 2004 and January 2005 to show

4  Ms. Heneghan's knowledge that the sling might have contributed to C.R.'s death.  Ms. Heneghan

5  received Dr. Howard's autopsy report on December 12, 2004.  Dkt. 28-2 Exh. B at 6.

6  Defendants claim that if Plaintiffs had inquired further in 2005, Dr. Howard would have told

7  them that sling was a potential factor in C.R.'s death, and that he had not ruled out the sling as

8  having a causative role.  Dkt. 27 at 7-8.  *See also* Dkt. 28-1 Exh. A at 18-20.

9                          MOTION FOR SUMMARY JUDGMENT

10       On December 15, 2011, Defendants filed this motion for summary judgment, requesting

11  that this court dismiss Plaintiffs' lawsuit as barred by the applicable three-year statute of

12  limitations because Plaintiffs knew or should have known by January 2005 that the Nojo sling

13  might have contributed to C.R.'s death.  Dkt. 27 at 17.  Defendants claim there was no issue of

14  material fact, and that the matter may be determined as a matter of law where the facts are not in

15  dispute.  Dkt. 27 at 15.

16       On January 3, 2012, Plaintiffs responded, asserting that the case falls within the statute of

17  limitations because it was filed just eight months after Ms. Heneghan discovered the possible

18  connection between the sling and C.R.'s death in March and April 2010.  Dkt. 36 at 2.  Plaintiffs

19  claim that Ms. Heneghan believed she had done a sufficient investigation into C.R.'s death in

20  2005, and that she had no reason to suspect that the sling was a possible cause until she received

21  the email from the CPSC in March 2010, and Dr. Howard's response to her inquiry on April 2,

22  2010.  Dkt. 36 at 1.

23       On January 6, 2012, Defendants replied that there exists no issue of material fact, that

24  Plaintiffs knew the facts of their claim within three years of C.R.'s death, and that as a matter of

1  law Plaintiffs are charged with knowledge that the Nojo sling potentially played a role in C.R.'s

2  death.  Dkt. 38 at 8.

3  <u>LEGAL STANDARDS</u>

4     *A.  Summary Judgment*

5        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

6  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

7  movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c). The moving party is

8  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

9  showing on an essential element of a claim in the case on which the nonmoving party has the

10  burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).  There is no genuine issue

11  of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

12  for the non moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

13  (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

14  metaphysical doubt.").  *See also* Fed.R.Civ.P. 56(e).  Conversely, a genuine dispute over a

15  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

16  requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty*

17  *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

18  *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

19        The determination of the existence of a material fact is often a close question.  The court

20  must consider the substantive evidentiary burden that the nonmoving party must meet at trial –

21  e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254, *T.W. Elect.*

22  *Service Inc.*, 809 F.2d at 630.  The court must resolve any factual issues of controversy in favor

23  of the nonmoving party only when the facts specifically attested by that party contradict facts

24  specifically attested by the moving party.  The nonmoving party may not merely state that it will

1   discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial

2   to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson*, *supra*).

3   Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not

4   be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

5       *B.   Statute of Limitations*

6       Under the rule of *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), "federal courts sitting in

7   diversity jurisdiction apply state substantive law and federal procedural law." *Gasperini v.*

8   *Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  Because these events occurred in the

9   State of Washington, Washington substantive law applies in this diversity case.

10      The statute of limitations for claims brought under the Washington Products Liability

11  Act is codified at RCW 7.72.060(3).  That statute provides:

12          Subject to the applicable provisions of chapter 4.16 RCW pertaining to the tolling and
            extension of any statute of limitations, no claim under this chapter may be brought more
13          than three years from the time the claimant discovered or in the exercise of due diligence
            should have discovered the harm and its cause.
14
15  RCW 7.72.060(3).  The statute of limitations is therefore tolled until such time as the claimant

16  discovers or should have discovered in the exercise of due diligence that the harm resulted from

17  a product defect.

18      Washington law provides further guidance as to the meaning of the statute.  In *North*

19  *Coast Air Services, LTD v. Grumman Corporation*, 111 Wn.2d 315 (1988), the Washington

20  Supreme Court held that the statute of limitations "runs when the claimant discovers a

21  connection between his injury and the product." *Id*. at 340.  In so finding, the Court explained

22  that the "claimant must know or should with due diligence know that the cause in fact was an

23  alleged defect. Whether the claimant knew or should have known will ordinarily be a question of

24  fact." *Id*. at 319.

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 7

1    Further, "[t]he determination of when a plaintiff discovered or through the exercise of

2    due diligence should have discovered the basis for a cause of action is a factual question for the

3    jury." *Winburn v. Moore*, 143 Wn.2d 206, 213 (2001)(citing *Crisman v. Crisman*, 85 Wn.App.

4    15, 23, 931 P.2d 163 (1997)). *See also*, *Adcox Children's Orthopedic Hosp. & Med. Ctr.*, 123

5    Wn.2d 15, 34-35 (1993) ("the question of when a patient or representative reasonably should

6    have discovered the injury was caused by medical negligence is normally an issue of fact."); *Lo*

7    *v. Honda Motor Company, LTD*, 73 Wn.App. 455, 448 (1994) ("affirming trial Court's denial of

8    defendants motion for summary judgment on statute of limitations.")

9                                      DISCUSSION

10   Plaintiffs filed this action on December 14, 2010.  C.R. was found unresponsive on

11   October 23, 2004 and died on October 27, 2004.  The question is whether this action is barred by

12   statute because Plaintiffs should have known that the Nojo sling was a potential cause or

13   contributor to C.R.'s death.

14   Defendants argue that summary judgment is proper because the three-year statute of

15   limitations began to run in 2004 or 2005.  Review of the supporting documents, however,

16   indicates that a question of fact exists as to when Ms. Heneghan knew or should have known

17   through due diligence that the Nojo sling possibly contributed to C.R.'s death.  The statute of

18   limitations under RCW 7.72.060(3) starts to run when "the claimant discovers a connection

19   between his injury and the product."  *North Coast Air Services, LTD*, 111 Wn.2d at 340.

20   "[W]hether the claimant knew or should have known will ordinarily be a question of fact."  *Id.* at

21   319.  In this case, both parties assert facts in support of their theories, and therefore this is a

22   question properly determined by the finder of fact, not by this court on motion for summary

23   judgment.

24

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 8

1    This conclusion is further supported by the summary judgment standard, which provides

2    that the court shall grant summary judgment only if the pleadings, the discovery and disclosure

3    materials on file, and any affidavits show that there is no genuine issue as to any material fact

4    and that the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  While the

5    nonmoving party may not merely state that it will discredit the moving party's evidence at trial,

6    here, the Plaintiffs have provided sufficient detailed factual rebuttals to Defendants' assertions

7    regarding notice to indicate that a genuine issue of material fact exists on this point.  The

8    judgment of the finder of fact is required to resolve the different versions of the facts asserted by

9    the parties.

10    Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment

11    (Dkt. 27) is **DENIED**.

12    The Clerk is directed to send uncertified copies of this Order to all counsel of record and

13    to any party appearing *pro se* at said party's last known address.

14    Dated this 30th day of January, 2012.

ROBERT J. BRYAN
United States District Judge

ORDER ON DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT- 9